Filed 5/21/21

CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHARLES W. BEST, JR., et al., | |
| Plaintiffs and Appellants, | E074386 |
| v. | (Super.Ct.No. RIC1826349) |
| OCWEN LOAN SERVICING, LLC et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County. L. Jackson Lucky IV, Judge. Affirmed in part and reversed in part.

REQUEST FOR JUDICIAL NOTICE. Granted.

Charles W. Best Jr. and Robbie Johnson Best, Plaintiffs and Appellants in pro. per.; Yesk Law and Michael Yesk for Plaintiffs and Appellants. [*Retained*.]

Bryan Cave Leighton Paisner, Sara L. Markert, and Kristin S. Webb for Defendants and Respondents.

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II, IV, VI, and VII.C-F.

1

Plaintiffs Charles W. Best Jr. and Robbie Johnson Best allege that defendants — which we will call "Deutsche"[1] and "Ocwen"[2] (collectively the Bank) — have attempted to collect a debt secured by the Bests' home, despite having no legal right to do so. They further allege that, in the process, the Bank has engaged in unlawful, unfair, and fraudulent debt collection practices. Based on these allegations, they assert six causes of action, including one under the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, § 1788 et seq.)

The trial court sustained the Bank's demurrer to the entire complaint on the ground of res judicata; it ruled that the Bests were asserting the same cause(s) of action as in a prior federal action that they brought, unsuccessfully, against the Bank.

The Bests appeal. In the nonpublished portion of this opinion, we will hold that, as to three of the Best's causes of action — including their Rosenthal Act cause of action — the trial court erred by sustaining the demurrer based on res judicata. As to the other three, the Bests do not articulate any reason why res judicata does not apply; thus, they have forfeited any such contention. (*Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1147, fn. 3.)

In the trial court, however, the Bank also demurred on the ground that the Rosenthal Act does not apply to conduct in connection with a nonjudicial foreclosure. In

---

[1] This entity's full name is Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2005-D, Asset Backed Pass-Through Certificates.

[2] This entity's full name is Ocwen Loan Servicing, LLC.

2

the published portion of this opinion, we will hold that the Rosenthal Act can apply to a nonjudicial foreclosure; the lower federal court opinions on which the Bank relies have been superseded by controlling decisions of the United States Supreme Court, the Ninth Circuit, and the California Courts of Appeal.

Accordingly, we will affirm in part and reverse in part.

I

STATEMENT OF FACTS

Consistent with the standard of review (see part V, *post*), we assume that the following facts, as alleged in the operative complaint or as shown by judicial notice (see part IV, *post*), are true.

In 2005, the Bests took out a loan for $555,000, secured by a deed of trust on their home in Lake Elsinore. The lender, and thus the original beneficiary under the trust deed, was New Century Mortgage Corporation (New Century).

In March 2009, an assignment was recorded which stated that New Century assigned the note and trust deed to "Deutsche Bank National Trust Company, trustee for New Century."

In November 2009, a second assignment was recorded which stated that "Deutsche Bank National Trust Company, trustee for New Century" assigned the note and trust deed to Deutsche.[3]

---

[3]    The Bests alleged that the March and November 2009 assignments conveyed the trust deed but not the note. The assignments themselves, however, stated that they conveyed both the note and the trust deed.

In December 2010, due to financial hardship, the Bests stopped making payments on the loan.

In April 2012, Ocwen notified the Bests that it had become the servicer of the loan.

In April 2014, a third assignment was recorded which stated that Ocwen, as agent of New Century, assigned the trust deed — but not the note — to Deutsche.

Meanwhile, in January 2013, a substitution of trustee was recorded which stated that Ocwen, as agent for Deutsche, named Western Progressive, LLC (Western Progressive) as trustee. In September 2015, Western Progressive recorded a notice of default. In November 2018, Western Progressive recorded a notice of trustee's sale. In December 2018, the house was sold in a trustee's sale.

II

THE PRIOR FEDERAL ACTION

In November 2016, the Bests filed an action against Deutsche, Ocwen, and a third defendant in federal district court.

In 2017, they filed a first amended complaint. It alleged generally that Deutsche and Ocwen had no interest in the loan and therefore had no right to foreclose. It also alleged, somewhat more specifically, that the March 2009, November 2009, and April 2014 assignments were each "void" and a "nullity"; "[p]laintiffs adamantly dispute[] the contents of the Assignment[s] . . . ." Finally, and most specifically, it alleged that there had been an attempt to securitize the loan by placing it in a trust, which had failed

4

because the loan had not been timely or properly assigned to the trust in conformity with the pooling and servicing agreement governing the trust.

It asserted eleven causes of action: (1) declaratory relief; (2) negligence; (3) quasi-contract; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) violation of the California Homeowner Bill of Rights (Civ. Code, §§ 2924.17, 2924, subd. (a)(6)); (7) failure to give notice of the assignment of a mortgage (15 U.S.C. § 164l(g)); (8) rescission of a mortgage under the federal Truth in Lending Act (15 U.S.C. § 1601 et seq.); (9) cancellation of instruments; (10) unfair competition (Bus. & Prof. Code, § 17200 [UCL]); and (11) an accounting.

The Bank responded with a motion to dismiss. The district court granted the motion. As to the fourth and fifth causes of action, it granted the motion with leave to amend, because these claims had not been pleaded with sufficient specificity for the court to determine whether they were timely. As to all other causes of action, it granted the motion without leave to amend, based on lack of standing to challenge the allegedly defective securitization.[4]

The Bests filed a second amended complaint. Its factual allegations were substantially similar to those of the first amended complaint. It asserted four causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of federal law governing the taxation of a real estate mortgage

---

[4] As to Robbie Johnson Best, the district court also granted the motion as to the entire complaint based on lack of standing, in that she had no ownership interest in the property.

5

investment conduit (26 U.S.C. § 860G(d)(l)); and (4) violation of the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.).

Again, the Bank responded with a motion to dismiss. In May 2017, the district court granted the motion, without leave to amend. As to the first and second causes of action, it ruled again that these claims were not pleaded with sufficient specificity for the court to determine whether they were timely. As to the third and fourth causes of action, it ruled that the Bests had not been given leave to add new causes of action.

The Bests appealed, but the Ninth Circuit affirmed the dismissal.

III

THE PRESENT ACTION

The Bests filed this action in December 2018.

The operative (first amended) complaint alleged that the March 2009, November 2009, and April 2014 assignments were invalid. "Plaintiffs adamantly dispute[] the contents and truthfulness of" these assignments.

It did not specify why the March 2009 assignment was invalid. It alleged that the November 2009 assignment was invalid because the March 2009 assignment had been invalid. It alleged that the April 2014 assignment was invalid for two reasons: (1) the March and November 2009 assignments had been invalid; and (2) an agent had signed it without subscribing the name of his principal (see Civ. Code, § 1095).

It further alleged that the January 2013 substitution of trustee was invalid. "Plaintiffs adamantly dispute the contents of this [substitution of trustee]." It stated three

6

reasons: (1) the Bank had no interest in the loan; (2) the beneficiaries had not signed and recorded a majority action affidavit (Civ. Code, § 2941.9); and (3) an agent had signed it without adding the name of his principal.

The operative complaint asserted six causes of action: (1) violation of the Rosenthal Act; (2) improper substitution of trustee (Civ. Code, § 2934a, subd. (a)); (3) unfair competition (Bus. & Prof. Code, § 17200); (4) negligent misrepresentation; (5) cancellation of instruments; and (6) intentional infliction of emotional distress.

The Bank demurred to the first amended complaint, arguing that:

(1) The first cause of action, for violation of the Rosenthal Act, did not allege any prohibited debt collection practice and was untimely.

(2) The second cause of action, for improper substitution of a trustee (Civ. Code, § 2934a, subd. (a)(l)(A)-(C)), failed to allege any statutory violation.

(3) The third cause of action, for unfair competition, did not allege any unlawful, unfair, or fraudulent business practice and was untimely.

(4) The fourth cause of action, for negligent misrepresentation, failed to allege misrepresentation with sufficient specificity and was untimely.

(5) The fifth cause of action, for cancellation of instruments, failed to allege that any of the instruments were void or voidable.

(6) The sixth cause of action, for intentional infliction of emotional distress, failed to allege severe emotional distress.

(7) The entire complaint was barred by res judicata.

The trial court sustained the demurrer, without leave to amend, based solely on res judicata. Accordingly, it entered a judgment of dismissal.

IV

REQUESTS FOR JUDICIAL NOTICE

The Bests contend that the trial court erred by granting the Bank's request for judicial notice. They also oppose the Bank's request for judicial notice in this appeal.

A.     *Additional Factual and Procedural Background*.

1.     *Request for judicial notice in the trial court*.

In support of its demurrer, the Bank requested judicial notice of the following publicly filed or recorded documents:[5]

(a)  Recorded documents concerning the property:

(a)(1)  2005 trust deed.[6]

(a)(2)  March 2009 assignment of trust deed.

(a)(3)  November 2009 assignment of trust deed.

(a)(4)  January 2013 substitution of trustee.

(a)(5)  April 2014 assignment of trust deed.

(a)(6)  2015 notice of default.

---

[5]     The documents were not certified copies and were not authenticated by a declaration or otherwise. The Bests, however, did not object on this ground, nor have they ever claimed that the documents were not what they purport to be.

[6]     Page 6 is missing; in its place is the first page of some apparently unrelated trust deed.

(a)(7)  2016 notice of trustee's sale.

(b)  Documents filed in the federal action:

(b)(1)  Docket.

(b)(2)  Order granting motion to dismiss first amended complaint, in part, without leave to amend.

(b)(3)  Order granting motion to dismiss second amended complaint, without leave to amend.

(b)(4)  Ninth Circuit memorandum opinion affirming the dismissal.

The Bests filed an opposition to this request.  They argued that the trial court could take judicial notice of the recordation or filing of the documents but not of the truth of their contents.  They also argued that the documents were "outside the scope of this matter . . . ."  The trial court nevertheless granted the request.

2.    *Request for judicial notice on appeal*.

The Bank has filed a request for judicial notice on appeal of the following publicly filed or recorded documents:

(c)  Recorded documents concerning the property:

(c)(1)  2016 notice of trustee's sale.

(c)(2)  2018 trustee's deed upon sale.

(d)  Documents filed in the federal action:

(d)(1)  Complaint.

(d)(2)  First amended complaint.

9

(d)(3)  Second amended complaint.

The Bests have filed an opposition to this request.  Once again, they argue that we cannot take judicial notice that the contents of the documents are true, and that the documents are "outside the four corners of their . . . [c]omplaint."  They also argue that the notice of trustee's sale and the trustee's deed are irrelevant because they were recorded after the Bests filed their operative complaint in this action.  Finally, they argue that the documents have not been duly authenticated by a witness with personal knowledge, and hence they do not qualify as business records under Evidence Code section 1271.

B.      *Discussion*.

The fact that the documents were "outside the four corners" of the Bests' complaint does not preclude judicial notice.  In ruling on a demurrer, a court can consider matters that are subject to judicial notice, even if they are not alleged in the complaint.  (Code Civ. Proc., § 430.30, subd. (a); *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 834.)  To put it another way, "[r]elevant matters that are properly the subject of judicial notice may be treated as having been pled.  [Citation.]"  (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 742.)

Indeed, "where an allegation is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity.  [Citation.]"  (*Taliaferro v. Contra Costa County* (1960) 182 Cal.App.2d 587, 592.)

10

1. *Request for judicial notice in the trial court.*

   a. *Recorded documents concerning the property.*

The trial court properly took judicial notice of the recorded documents concerning the property. "A recorded [document] is an official act of the executive branch, of which [a] court may take judicial notice. [Citations.]" (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194; see also Evid. Code, § 452, subd. (c); *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1.)

"'The hearsay rule applies to statements contained in judicially noticed documents, and precludes consideration of those statements for their truth unless an independent hearsay exception exists. [Citation.]' [Citation.]" (*Barri v. Workers' Comp. Appeals Bd.* (2018) 28 Cal.App.5th 428, 437.) Thus, for example, just because Ocwen purported to execute the 2014 assignment of trust deed as agent for New Century does not mean it was authorized to do so.

It appears, however, that the trial court properly took judicial notice that the recorded documents existed; it did not *improperly* take judicial notice that the statements in them were *true*. It sustained the demurrer based on res judicata. For that purpose, it did not matter whether any of the statements in the recorded documents were true. At most, the recorded documents merely fleshed out (or even supported) the Bests' allegations challenging the validity of those documents.

11

b.      *Documents filed in the federal action.*

The trial court also properly took judicial notice of the documents filed in the federal action.  (Evid. Code, § 452, subd. (d)(2).)  "'The court may in its discretion take judicial notice of any court record in the United States.  [Citation.]  This includes any orders, findings of facts and conclusions of law, and judgments within court records.  [Citations.]  However, while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files.'  [Citation.]"  (*In re Vicks* (2013) 56 Cal.4th 274, 314.)

Arguably, the statements in the federal docket were *admissible* hearsay.  (Evid. Code, § 1280.)  Even if not, however, the trial court could take judicial notice of their truth under Evidence Code section 452, subdivision (c), which permits judicial notice of "[o]fficial acts of the . . . judicial department[] of the United States," and subdivision (h), which permits judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (See *In re Cook* (2017) 7 Cal.App.5th 393, 401, rev'd and remanded (2019) 7 Cal.5th 439.)[7]

The trial court could also take judicial notice of "the truth of results reached" in the orders and the memorandum opinion (*In re Vicks*, *supra*, 56 Cal.4th at p. 314) — in

_____

**7**      Because the Supreme Court reversed on other grounds, *Cook* remains citable and persuasive authority on this point.  (Cal. Rules of Court, rule 8.1115(e)(2).)

12

other words, their legal effect, including what factual or legal issue was before the federal court and how the federal court ruled on that issue. (See *People v. Woodell* (1998) 17 Cal.4th 448, 460.) "[E]ven though a factual finding in a prior judicial decision may not establish the truth of that fact for purposes of judicial notice, the finding itself may be a proper subject of judicial notice if it has a res judicata or collateral estoppel effect in a subsequent action." (*Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 148.) "Taking judicial notice of a finding in determining its preclusive effect does not involve a determination of the finding's truth." (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 988, 1005.) It does not appear that the trial court did any more than this.

### 2. *Request for judicial notice on appeal*.

The Bank should have filed certified copies of the documents of which it wants us to take judicial notice. (*People v. Preslie* (1977) 70 Cal.App.3d 486, 495.) Nevertheless, we have discretion to take judicial notice of uncertified copies (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609, fn. 3; *Adoption of McDonnell* (1947) 77 Cal.App.2d 805, 808), particularly when they are authenticated somehow and there is no claim that they are not authentic.

The Bank's counsel submitted a declaration stating that each document was "a true and correct copy of" an official record. She also stated, under penalty of perjury, that she had personal knowledge of these facts. Moreover, these were matters of which she could reasonably have personal knowledge; in the absence of a contrary showing, this was

sufficient. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 10:113, pp. 10-47—10-48; see, e.g., *People ex rel. Owen v. Media One Direct, LLC* (2013) 213 Cal.App.4th 1480, 1484.)

We will not take judicial notice that any of the statements in the documents are true. Accordingly, it was not necessary to establish that the documents came under any hearsay exception.

### a. *Recorded documents concerning the property.*

The recorded documents concerning the property were judicially noticeable. Admittedly, they were never presented to the trial court. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court."].) However, the Bests argue that, even if the demurrer was properly sustained, they should be given leave to amend so as to state a cause of action for wrongful foreclosure. The Bank therefore argues that these documents show that the Bests could not state such a cause of action. If the Bank is correct, it would be futile for us to grant leave to amend. It is therefore appropriate for us to consider them for the first time on appeal.

### b. *Documents filed in the federal action.*

The documents from the federal action that the Bank submitted to the trial court had one significant omission: they did not include the Bests' original, first amended, or second amended complaint. These would seem highly relevant to the Bank's claim that the federal action was res judicata. The district court's dismissal orders did summarize

14

the facts the Bests were alleging and the causes of action they were asserting, but only incompletely; and, as discussed above, there is some question as to whether these recitals were hearsay.

The Bank, possibly realizing its mistake, has asked us to take judicial notice of these three complaints on appeal.

These documents were never presented to the trial court. If the record that was before the trial court fell short of showing that res judicata applied, it erred. Belatedly supplying the complaints to us could not change that.

If, however, the trial court would have been required to sustain the demurrer if it *had* had these documents, it would be futile for us to ignore them. Otherwise, on remand, the Bank would simply file a motion for judgment on the pleadings, with a request for judicial notice of the complaints; the trial court would grant the motion; and the Bests would appeal again.

Technically, then, we do not take judicial notice of the complaints as showing that the trial court ruled correctly, based on the information it had. However, we do take judicial notice of them as bearing on whether any error was harmless.

V

STANDARD OF REVIEW

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]

15

Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  [Citations.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse. [Citation.]"  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

Our standard of review is de novo.  (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

VI

RES JUDICATA

The Bests contend that the trial court erred by ruling that the dismissal of the federal action bars this entire action as a matter of res judicata.

In general, res judicata "helps to ensure that a dispute resolved in one case is not relitigated in a later case."  (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.)  Res judicata has two different aspects, claim preclusion and issue preclusion.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823.)  Somewhat confusingly, however, res judicata is often used to mean claim preclusion alone, in contrast to collateral estoppel, which means issue preclusion alone.  (*Id*. at p. 824.)

In this action, the Bank relies exclusively on claim preclusion.  Accordingly, from here on, we will use res judicata and claim preclusion interchangeably.

16

"Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.]" (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824, italics omitted; accord, *Montana v. United States* (1979) 440 U.S. 147, 153.) "''"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."'' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.)

The Bests do not dispute that they and defendants were all parties to the federal action. They also do not dispute that the judgment in the federal action was final and on the merits. We therefore express no opinion on these points. The sole bone of contention is whether the causes of action in this action are the same as in the federal action.

Both sides go astray at the very beginning of this analysis, by citing California law relying on California's "primary right" theory.

"A federal judgment 'has the same effect in the courts of this state as it would have in a federal court.' [Citation.]" (*Younger v. Jensen* (1980) 26 Cal.3d 397, 411; see also Rest.2d of Judgments § 87 ["Federal law determines the effects under the rules of res judicata of a judgment of a federal court."].)

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits. [Citation.]" (*Taylor v. Sturgell*

17

(2008) 553 U.S. 880, 891, fn. 4; see also *Semtek Intern. Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497, 508.) By contrast, "[f]or judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of res judicata, which th[e United States Supreme] Court has ultimate authority to determine and declare. [Citation.]" (*Taylor v. Sturgell*, *supra*, at p. 891.) The prior action invoked federal question jurisdiction, so federal res judicata rules apply.

In many respects, California res judicata rules and federal res judicata rules are the same. However, there are a few significant differences.

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' [Citation.]" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) Under this theory, "'a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty.' [Citation.]" (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 630-631.)

The federal courts reject California's primary right theory. (*Gonzales v. California Department of Corrections* (9th Cir. 2014) 739 F.3d 1226, 1232.) Rather, they apply the "'transactional' theory." (*Ibid*.) Under this theory, "[s]uits involve the same claim (or 'cause of action') when they "'aris[e] from the same transaction,'" [citation], or involve a 'common nucleus of operative facts,' [citation]." (*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.* (2020) ___ U.S. ___, ___ [140 S.Ct. 1589, 1595].)

18

The Bests argue that their prior FDCPA cause of action and their present Rosenthal Act cause of action are not the same, for several reasons.  Of these, we consider only their argument that their current Rosenthal Act cause of action arises out of "continuing violations," including the December 2018 foreclosure, which occurred after the judgment in the federal action.

"[C]laim preclusion does not apply to claims that were not in existence and could not have been sued upon . . . when the allegedly preclusive action was initiated. [Citation.]" (*Media Rights Technologies, Inc. v. Microsoft Corp.* (9th Cir. 2019) 922 F.3d 1014, 1021, and cases cited.)  "That both suits involved 'essentially the same course of wrongful conduct' is not decisive.  Such a course of conduct . . . may frequently give rise to more than a single cause of action. . . .  While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." (*Lawlor v. National Screen Service Corp.* (1955) 349 U.S. 322, 327-328; see also *Frank v. United Airlines, Inc.* (9th Cir. 2000) 216 F.3d 845, 851 ["A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim."], cert. den. (2001) 532 U.S. 914.)

The Bests allege that:  "Defendants are violating [the Rosenthal Act] by employing deceptive means by (i) misrepresenting of the status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii)

19

misrepresenting the amounts owed for escrow; (iv) declaring the loan in default status; (v) threatening to proceed with a foreclosure sale due to lack of payment on the debt obligation; (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, reinstatement letters, and payoff letters." Nothing on the face of the complaint or subject to judicial notice shows that these acts occurred before the federal action was either filed or concluded.

Moreover, the Bests specifically allege that: "Defendants are violating [the Rosenthal Act] by engaging in abusive and oppressive conduct **within one year** of the filing of the Complaint through (i) unethical mismanagement of the escrow account; (ii) refusal to correct accounting errors or adequately responding to Plaintiffs' repeated disputes over several years; (iii) assessment of illegal fees; and improperly attempting to collect amounts that are not due to them." (Bolding in original.) Thus, at a minimum, these alleged acts took place after the federal complaint was filed.

It could be argued that, as a matter of *issue preclusion*, the federal action determined that the Bests lacked standing to challenge the securitization of their loan; or, more broadly, that the loan was properly securitized; or, even more broadly, that the Bank was the true holder of the loan, with the right to foreclose. We need not decide the scope of the issues precluded, if any, because, once again, the Bank does not assert issue preclusion. It asserts only claim preclusion.

20

"[C]laim preclusion often cannot apply in settings of continuing or interrupted and renewed conduct, and . . . the result may be burdensome repetitive litigation. To the extent that greater protection is needed, it is better to rely on issue preclusion than on efforts to draw into claim preclusion matters that could not reasonably be advanced in the first litigation." (18 Wright et al., Federal Practice & Procedure (3d ed. 2005) § 4409.)

Finally, even assuming the federal action did broadly establish that the Bank is the true holder of the loan, that would not mean the Bests' current allegations are unfounded. The true holder of a loan may nevertheless "misrepresent[] the status of the debt," "attempt[] to collect illegal fees and costs," "refus[e] to correct accounting errors," or "improperly attempt[] to collect amounts that are not due." We cannot say, from the face of the complaint or from matters subject to judicial notice, that these allegations merely reframe the Bests' claim that the Bank is not the true holder of the loan.

The Bests' res judicata argument is directed almost exclusively toward their Rosenthal Act cause of action. However, they do also assert that their causes of action for unfair competition and for cancellation of instruments "were based on the Rosenthal Act and instruments that were not yet recorded in 2016."

The unfair competition cause of action expressly incorporates "[t]he violations of law alleged in" the Rosenthal Act cause of action. Because at least some of those violations allegedly occurred after the complaint in the federal action was filed, the federal judgment is not res judicata as to this cause of action.

21

The cancellation cause of action seeks to cancel seven specified instruments. To the extent that it seeks to cancel (1) the trust deed, (2) the March 2009 assignment, (3) the November 2009 assignment, (4) the January 2013 substitution of trustee, and (5) the April 2014 assignment, it arises out of the same nucleus of operative fact as did the federal action. Admittedly, the Bests now claim that the assignments are invalid for different reasons than they asserted in the federal action; and, in the federal action, they did not claim that the trust deed or the substitution of trustee was invalid at all.[8] Nevertheless, the nucleus of operative fact out of which the federal action arose included the entire series of transactions based on which the Bank claimed the right to foreclose.

The cancellation cause of action also seeks to cancel (6) the September 2015 notice of trustee's sale. It was in existence when the federal action was filed and could have been included in that action, even though it was not. Therefore, this aspect of the cause of action is also barred.

The cancellation cause of action, however, also seeks to cancel (7) the November 2018 notice of trustee's sale. As this instrument did not exist when the federal action was filed, the Bests could not have sought to cancel it in that action. Thus, even though, in other respects, their claim to cancel it arises out of the same nucleus of operative facts, res judicata does not apply. (See *Howard v. City of Coos Bay* (9th Cir. 2017) 871 F.3d 1032, 1039-1040 [judgment against plaintiff in employment retaliation action based on

---

[8]     Even in this action, they do not actually allege any *reason* why the trust deed itself is invalid.

22

her termination did not bar new employment retaliation action based on subsequent refusal to rehire her for the same reasons].)

Turning to the Bests' remaining causes of action, they argue only that they did not allege them in the federal action. That does not prevent the application of res judicata. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. [Citations.]" (*Brown v. Felsen* (1979) 442 U.S. 127, 131.) "True res judicata bars recovery when a party seeks to relitigate the same facts even when the party argues a novel legal theory. [Citation.]" (*Snow Ingredients, Incorporated v. SnoWizard, Incorporated* (5th Cir. 2016) 833 F.3d 512, 522.) "The concern behind claim preclusion is that a plaintiff should not be able to relitigate the same facts under a different legal theory. [Citation.]" (*Hiser v. Franklin* (9th Cir. 1996) 94 F.3d 1287, 1292, cert. den. (1997) 520 U.S. 1103.) The Bests have forfeited any other argument regarding these causes of action.

VII

ALTERNATIVE GROUNDS FOR THE DEMURRER

A.     *Introduction.*

Besides demurring to the complaint based on res judicata, the Bank also demurred to each cause of action on grounds that were specific to that cause of action. The trial court did not rule on these grounds. Nevertheless, "[a] judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any

23

grounds stated in the demurrer, whether or not the court acted on that ground. [Citations.]" (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

In part VI, *ante*, we held that three causes of action — under the Rosenthal Act, for unfair competition, and for cancellation of instruments — were not barred by res judicata. Here, then, we consider whether the demurrer to these causes of actions should have been sustained on the alternative grounds that the Bank asserted below.

B.      *Foreclosure as a Violation of the Rosenthal Act*.

The Bank demurred to the Rosenthal Act cause of action on the ground that "[c]onduct undertaken in connection with the foreclosure of a deed of trust is not actionable under [the Rosenthal Act]." The Bests contend that the demurrer could not have been sustained on this ground.

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts . . . ." (Civ. Code, § 1788.1, subd. (b).) It prohibits specified conduct by a "debt collector" who is attempting to collect a "consumer debt." (Civ. Code, §§ 1788.10, 1788.11, 1788.12, 1788.13, 1788.14, 1788.15, 1788.16, 1788.17, 1788.30.) "Debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." (Civ. Code, § 1788.2, subd. (c).) "Debt collection" is defined as "any act or practice in connection with the collection of consumer debts." (*Id*., subd. (b).) "Consumer debt" is defined as "money, property, or their equivalent, due or owing or

24

alleged to be due or owing from a natural person by reason of a consumer credit transaction." (*Id.*, subd. (f).) And "consumer credit transaction" is defined as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." (*Id.*, subd. (e).)

The Rosenthal Act is modeled on the federal FDCPA. It incorporates the FDCPA, so that a violation of the FDCPA is per se a violation of the Rosenthal Act. (Civ. Code, § 1788.17.) However, it is more extensive than the FDCPA. For example, the FDCPA does not apply to creditors seeking to collect their own debts; however, the Rosenthal Act does, "so long as they do so 'in the ordinary course of business, regularly.'" (*Huy Thanh Vo v. Nelson & Kennard* (E.D. Cal. 2013) 931 F.Supp.2d 1080, 1090, quoting Civ. Code § 1788.2, subd. (c).)

The Bank asserts that the Rosenthal Act does not apply to foreclosure on a trust deed, citing federal district court opinions. There are indeed a host of such opinions,[9]

_____

[9] We list only the published opinions that we have found: *Avila v. CitiMortgage, Inc.* (D.D.C. 2014) 45 F.Supp.3d 110, 120; *Rockridge Trust v. Wells Fargo, N.A.* (N.D. Cal. 2013) 985 F.Supp.2d 1110, 1164; *Altman v. PNC Mortg.* (E.D. Cal. 2012) 850 F.Supp.2d 1057, 1071; *Hamilton v. Bank of Blue Valley* (E.D. Cal. 2010) 746 F.Supp.2d 1160, 1176-1177; *Clark v. Countrywide Home Loans, Inc.* (E.D. Cal. 2010) 732 F.Supp.2d 1038, 1048; *Jensen v. Quality Loan Service Corp.* (E.D. Cal. 2010) 702 F.Supp.2d 1183, 1200; *Sipe v. Countrywide Bank* (E.D. Cal. 2010) 690 F.Supp.2d 1141, 1151; *Saldate v. Wilshire Credit Corp.* (E.D. Cal. 2010) 711 F.Supp.2d 1126, 1132; *Gardner v. American Home Mortg. Servicing, Inc.* (E.D. Cal. 2010) 691 F.Supp.2d 1192, 1198-1199; *Castaneda v. Saxon Mortg. Services, Inc.* (E.D. Cal. 2009) 687 F.Supp.2d 1191, 1197; *Keen v. American Home Mortg. Servicing, Inc.* (E.D. Cal. 2009) 664 F.Supp.2d 1086, 1095; *Rosal v. First Federal Bank of California* (N.D. Cal. 2009) 671

*[footnote continued on next page]*

although they were mostly decided during a very short time period — 2008 to 2014.[10] However, they have been undermined by subsequent decisions of the Supreme Court, the Ninth Circuit, and the California Courts of Appeal.

These district court opinions analogized the Rosenthal Act to the federal FDCPA, and relied on earlier cases holding that the FDCPA did not apply to foreclosure of a trust deed. (*Ines v. Countrywide Home Loans, Inc.* (S.D. Cal., Nov. 3, 2008, No. 08CV1267WQH(NLS)) 2008 U.S. Dist. LEXIS 88739, at \*6 ["California incorporated the FDCPA into the [Rosenthal Act . . . ."]; *Tina v. Countrywide Home Loans, Inc.* (S.D. Cal., Oct. 30, 2008, No. 08 CV 1233 JM (NLS)) 2008 U.S. Dist. LEXIS 88302, at \*19 ["the Rosenthal Act incorporates the majority of its substantive provisions from the FDCPA, creating similar substantive protections."].)

Those earlier FDCPA cases had reasoned that "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the

---

F.Supp.2d 1111, 1135; *Izenberg v. ETS Services, LLC* (C.D. Cal. 2008) 589 F.Supp.2d 1193, 1199.

[10]    A few nonpublished stragglers decided after 2014 engaged in no substantive analysis, merely citing the 2008-2014 cases. (E.g., *Kizler v. Budget Finance Company* (C.D. Cal., Apr. 1, 2020, No. CV 5:20-0296-DOC-KK) 2020 U.S. Dist. LEXIS 128026, at \*7-\*8.)

property." (*Hulse v. Ocwen Federal Bank, FSB* (D. Or. 2002) 195 F.Supp.2d 1188, 1204.)

To the extent that those opinions stated any grounds based on the Rosenthal Act itself, they were that a debt secured by a trust deed was not a "consumer debt," i.e., not taken out "primarily for personal, family, or household purposes" (Civ. Code, § 1788.2, subds. (e), (f)). (*Ricon v. Recontrust Co.* (S.D. Cal., Aug. 4, 2009, No. 09CV937-IEG-JMA) 2009 U.S. Dist. LEXIS 67807, at *9; *Pittman v. Barclays Capital Real Estate, Inc.* (S.D. Cal., Apr. 24, 2009, No. 09 CV 02241 JMAJB) 2009 U.S. Dist. LEXIS 34885, at *11.)

In 2019, in *Obduskey v. McCarthy & Holthus LLP* (2019) ____U.S. ___ [139 S.Ct. 1029], the Supreme Court effectively overruled the cases cited above holding that foreclosure is not debt collection, although it came to a similar result by different reasoning — it held that a business engaged in nonjudicial foreclosure proceedings is not a "debt collector" within the meaning of the FDCPA. (*Id*. at pp. 1033, 1035-1040.)

It relied on a provision of the FDCPA that is significantly different from the corresponding provision of the Rosenthal Act. The definition of "debt collector" in the FDCPA provides: "For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." (15 U.S.C. § 1692a(6).) Section 1692f(6), in turn, contains specific prohibitions applicable solely to nonjudicial foreclosures. The Supreme Court concluded that, by negative

27

implication, "debt collector" did *not* include a "business the principal purpose of which is the enforcement of security interests" for purposes of any of the *other* prohibitions of the FDCPA. (*Obduskey v. McCarthy & Holthus LLP*, *supra*, 139 S.Ct. at pp. 1036-1037.)

In the course of so holding, however, the court also indicated that a loan secured by a deed of trust *is* a "'debt' . . . primarily for personal, family, or household purposes" (see 15 U.S.C. § 1692a(5)); moreover, but for the FDCPA's negative implication to the contrary, a business engaged in nonjudicial foreclosure proceedings *would* be a "debt collector" (see 15 U.S.C. § 1692a(5)). Specifically, it stated:

"[A] home loan is an obligation to pay money, and the purpose of a mortgage is to secure that obligation. [Citation.] Foreclosure, in turn, is 'the process in which property securing a mortgage is sold to pay off the loan balance due.' [Citation.] In other words, foreclosure is a means of collecting a debt. And a business pursuing nonjudicial foreclosures would, under the capacious language of the Act's primary definition, be one that 'regularly collects or attempts to collect, directly or indirectly, debts.' [Citation.]

"It is true that . . . nonjudicial foreclosure does not seek 'a payment of money *from the debtor*' but rather from sale of the property itself. [Citation.] But nothing in the primary definition requires that payment on a debt come 'from a debtor.' The statute speaks simply of the 'collection of any debts . . . owed or due.' [Citation.] Moreover, the provision sweeps in both 'direc[t]' and 'indirec[t]' debt collection. [Citation.] So, even if nonjudicial foreclosure were not a *direct* attempt to collect a debt, because it aims to collect on a consumer's obligation by way of enforcing a security interest, it would be an

28

*indirect* attempt to collect a debt." (*Obduskey v. McCarthy & Holthus LLP*, *supra*, 139 S.Ct. 1029, 1036-1037.)

And this makes sense.  It seems absurd to say that "[p]ayment of funds is not the object of the foreclosure action."  (But see *Hulse v. Ocwen Federal Bank, FSB*, *supra*, 195 F.Supp.2d at p. 1204.)  "[A] creditor's true objective in foreclosure is satisfaction of the underlying debt, not obtaining possession of the secured property. . . .  [¶]  . . . [F]oreclosed property is sold at public sale, and the proceeds from the sale are then applied to the outstanding debt.  Thus, like any debt collection, the payment of money is the ultimate result of foreclosure.  In foreclosure there merely happens to be an additional step required to obtain that payment, namely, sale of the secured property.  Regardless, the ultimate result of foreclosure is that the debtor's obligation is satisfied through the payment of money."  (Marshall, *The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors the Protection They Deserve from Abusive Foreclosure Practices* (2010) 94 Minn. L. Rev. 1269, 1297, fns. omitted.)

Meanwhile, in 2018, *Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283 (*Davidson*) held that a loan secured by a trust deed *can* be a "consumer debt" within the meaning of the Rosenthal Act.  (*Id.* at pp. 298-300.)  This definitive construction of state law effectively overruled the contrary federal cases.  (See also *Gilliam v. Levine* (9th Cir. 2020) 955 F.3d 1117, 1123 [loan secured by real property, which aunt (as trustee of a trust) had taken out to repair the home of niece (the beneficiary of the trust), was

29

"consumer debt" under the Rosenthal Act].)  Here, the Bests specifically allege that they took out the loan "for personal, family, or household purposes . . . ."

As if *Davidson* were not enough, our Legislature recently amended the Rosenthal Act so as to state that:  "The term 'consumer debt' includes a mortgage debt."  (Civ. Code, § 1788.2, subd. (f), Stats. 2019, ch. 545, § 2, p. 5004.)  This amendment took effect on January 1, 2020; however, the Legislature stated that it "do[es] not constitute a change in, but [is] declaratory of, existing law."  (Stats. 2019, ch. 545, § 1, p. 5004.)  Labeling an amendment "declaratory" means, at a minimum, that the Legislature intends it to apply to existing causes of action.  (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244-245.)  Hence, the amendment applies to the Bests' complaint.[11]

In a fallback argument, the Bank seeks to distinguish the conduct involved in *Davidson*, such as harassing phone calls (*Davidson.*, *supra*, 21 Cal.App.5th at pp. 291-292), from conduct authorized by the foreclosure statutes, such as recording a document. Like Chicken Little, it vaguely suggests the sky will fall if the Rosenthal Act is applied so broadly.  However, it suggests no statutory basis for such a distinction.  Moreover, it identifies no actual conflict between the foreclosure statutes and the Rosenthal Act.  For example, while the foreclosure statutes authorize the recordation of a substitution of trustee (Civ. Code, § 2934a, subd. (a)(1)), they do not authorize or require the

---

[11]    At oral argument, counsel for the Bank conceded that a mortgage is a consumer debt, or, at least, that it was *not* contending that a mortgage is *not* a consumer debt.

30

substitution of trustee to contain a "false representation." (See 15 U.S.C.A. § 1692e(10); see also Civ. Code, § 1788.17 [incorporating 15 U.S.C.A. § 1692e].)

At oral argument, counsel for the Bank noted that the FDCPA, as incorporated by the Rosenthal Act, prohibits a debt collector (with some exceptions) from communicating "in connection with the collection of any debt, with any person other than the consumer . . . ." (15 U.S.C.A. § 1692c(b).) Counsel argued that this would prevent a trustee from giving notice of sale. (See Civ. Code, §§ 2924, subd. (a)(3), 2924f.) However, the provision of the Rosenthal Act incorporating the FDCPA states, "every debt collector collecting or attempting to collect a consumer debt shall comply with" the FDCPA. (Civ. Code, § 1788.17.) As already discussed, under *Obduskey*, a business engaged in nonjudicial foreclosure proceedings is not a "debt collector" within the meaning of the FDCPA and therefore is not forbidden to communicate with third parties. Thus, even though such a business is a "debt collector" under the Rosenthal Act, it can contact third parties without violating the FDCPA, and hence without violating the Rosenthal Act. We therefore conclude that a nonjudicial foreclosure can be "debt collection" by a "debt collector" so as to trigger the protections of the Rosenthal Act.

Finally, we note that the Bests have alleged violations of the Rosenthal Act that go beyond the scope of an ordinary foreclosure. These include "unethical mismanagement of the escrow account" and "refusal to correct accounting errors." Even those federal cases that have accepted that foreclosure cannot violate the Rosenthal Act have conceded that debt collection activities "beyond the scope of the ordinary foreclosure process" *can*

31

violate the Rosenthal Act. (*Mulato v. Wells Fargo Bank, N.A.* (N.D. Cal. 2014) 76

F.Supp.3d 929, 955; *Rockridge Trust v. Wells Fargo, N.A.*, *supra*, 985 F.Supp.2d at

pp. 1164-1165; *Walters v. Fidelity Mortg. of Cal, Inc.* (E.D. Cal. 2010) 730 F.Supp.2d

1185, 1203.)

C.      *The Statute of Limitations*.

The Bank also argues that the Bests' Rosenthal Act cause of action is time-barred.

The limitations period under the Rosenthal Act is one year. (Civ. Code,

§ 1788.30, subd. (f).) The Bank asserts that the Bests were aware of allegedly unlawful

debt collection practices as early as 2016, when they filed the federal action.[12]

The discovery rule, applicable to most causes of action, "'postpones accrual of a

cause of action until the plaintiff discovers, or has reason to discover, the cause of

action.' [Citations.]" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185,

1192.) "'[T]he infliction of appreciable and actual harm, however uncertain in amount,

will commence' the running of the statute of limitations. [Citation.]" (*Grisham v. Philip

Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 642.) "'"'[W]here an injury, although slight,

is sustained in consequence of the wrongful act of another, and the law affords a remedy

therefor, the statute of limitations attaches at once. It is not material that all the damages

resulting from the act shall have been sustained at that time, and the running of the statute

---

[12]      Arguably, the Bests were not demonstrably aware until they filed their second amended complaint in the federal action, which was when they first alleged a cause of action for violation of the FDCPA. Even if so, however, that complaint was filed in March 2017, more than a year before this action was filed, in December 2018.

is not postponed by the fact that the actual or substantial damages do not occur until a later date . . . .'"' [Citation.]" (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 745, italics omitted.)

These principles, however, relate to damages that continue to flow from a "completed act." (*Vaca v. Wachovia Mortgage Corp.*, *supra*, 198 Cal.App.4th at p. 745.) "[S]eparate, recurring invasions of the same right can each trigger their own statute of limitations." (*Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th at p. 1198.) "[I]f the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct[,] parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance." (*Ibid.*)

Here, the Bests specifically allege that the Bank violated the Rosenthal Act "within one year of the filing of the [c]omplaint . . . ." At a minimum, they can recover any damages flowing from these most recent violations.

In addition, the Bests rely (and relied below) on the continuing violation doctrine. This doctrine "permits recovery 'for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period[.]' [Citation.] 'The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if "the action is filed within one year of the most recent

[violation]" [citation], and the entire course of conduct is at issue.' [Citation.]" (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 343.)

"Under the appropriate circumstances . . . , the continuing violation doctrine may apply to [Rosenthal Act] claims." (*Joseph v. J.J. Mac Intyre Companies, L.L.C.* (N.D. Cal. 2003) 281 F.Supp.2d 1156, 1161; accord, *Komarova v. National Credit Acceptance, Inc.*, *supra*, 175 Cal.App.4th at p. 344.) "The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts." (*Joseph v. J.J. Mac Intyre Companies, LLC* at p. 1161.) If it does, "[a]pplication of the continuing violation doctrine to these facts is not only logical by way of analogy, it is entirely consistent with . . . the Rosenthal Act's broad remedial purpose of protecting consumers. [Citations.]" (*Id.* at p. 1162.)

The Bank's only counter-argument is that "[t]here are no allegations of any continuing violations"; in support, it cites the entire operative complaint. Actually, the complaint specifically alleges that the Bank's violations of the Rosenthal Act "are willful, knowing, and continuing." Even without that, its allegations of "numerous" violations, though the violations take a number of different forms, are sufficient to plead a continuing pattern and course of conduct for limitations purposes. (See generally *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823.)

D.    *Unfair Competition.*

In demurring to the unfair competition cause of action, the Bank argued that the Bests failed to allege any unlawful, unfair, or fraudulent conduct. They also argued that

34

this cause of action was time-barred. The Bests contend that the demurrer could not have been sustained on these grounds.

Unfair competition is defined (as relevant here) as "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) "Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition. [Citation.]" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471.)

"'''"By proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.'" [Citation.] "Virtually any law — federal, state or local — can serve as a predicate for a [UCL] action." [Citation.]' [Citation.]" (*Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 553.) The Bests adequately alleged violations of the Rosenthal Act (see part VII.B, *ante*); hence, they also adequately alleged "unlawful" business practices.

It follows that the demurrer to this cause of action could not be sustained on the ground that it did not allege any unlawful conduct. We need not decide whether the Bests adequately alleged any unfair or fraudulent conduct.

The limitations period for unfair competition is four years. (Bus. & Prof. Code § 17208.) As the Rosenthal Act cause of action was not time-barred (see part VII.B, *ante*), a fortiori the unfair competition cause of action also was not time-barred.

E.      *Cancellation of Instruments*.

In demurring to the cause of action for cancellation of instruments, the Bank argued that the Bests failed to allege any facts showing that the instruments were void or voidable — i.e., the allegations to this effect were unduly conclusory. The Bests contend that the demurrer could not have been sustained on this ground.

One of the elements of a cause of action for cancellation of an instrument is that the instrument is void or voidable. (Civ. Code, § 3412; *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1193-1194.) The Bests' allegations that the March 2009 and November 2009 assignments were invalid were indeed conclusory. However, they did specifically allege that the January 2013 substitution of trustee and the April 2014 assignment were invalid because they were executed by an agent without subscribing the name of the principal. They also specifically alleged that the January 2013 substitution of trustee was invalid because the beneficiaries had not signed and recorded a majority action affidavit.

These allegations were not conclusory. Because the Bank has never argued otherwise, we assume, without deciding, that, if true, they would mean that these instruments are void or voidable. It follows that the demurrer to this cause of action could not have been sustained on this ground.

F.      *Wrongful Foreclosure*.

The Bests contend that, if we hold that the demurrer was properly sustained, we should give them leave to amend to state a cause of action for wrongful foreclosure. We

are holding, however, that the demurrer should have been overruled, at least in part. Accordingly, we do not decide this issue. If, on remand, the Bests move for leave to amend, it will be up to the trial court to decide this issue in the first instance.

VIII

DISPOSITION

The judgment is reversed with respect to the first (Rosenthal Act), third (unfair competition), and fifth (cancellation of instruments) causes of action. The judgment is affirmed with respect to the second (improper substitution of trustee), fourth (negligent misrepresentation), and sixth (intentional infliction of emotional distress) causes of action. The Bests are awarded costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

MILLER
J.

RAPHAEL
J.

37